IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| SCOTT P. HINTZ, on behalf of himself and on behalf of all similarly situated individuals, | ) ) ) | |
| | ) | |
| TYSON E. MARSHEK, on behalf of himself and on behalf of all similarly situated individuals, | ) ) ) | |
| | ) | |
| and | ) ) | |
| TIFFANY WELLS, on behalf of herself and on behalf of all similarly situated individuals, | ) ) ) | Civil Action No. 3:09cv291 |
| | ) | |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) | |
| | ) | |
| and | ) ) | |
| MARAUDER CORPORATION, Serve: Paracorp Incorporated, R.A. 2804 Gateway Oaks Drive Suite 200 Sacramento, CA 90064 | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## SECOND AMENDED CLASS COMPLAINT

Plaintiffs Scott P. Hintz ("Hintz") on behalf of himself and on behalf of all similarly

situated individuals, Tyson E. Marshek ("Marshek") on behalf of himself and on behalf of all

similarly situated individuals, Tiffany Wells ("Wells") on behalf of herself and on behalf of all

similarly situated individuals, by counsel, pursuant to Fed. R. Civ. P. 3 and 23, submit their

Second Amended Class Complaint against Defendants Experian Information Solutions, Inc.

("Experian") and Marauder Corporation ("Marauder") and, in support of same, state as follows:

PRELIMINARY STATEMENT

1.     This is a class action for actual, statutory, and punitive damages, litigation costs,

and attorneys' fees under the Fair Credit Report Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

PARTIES

2.     Hintz is a Virginia citizen, residing in this judicial district.  Hintz is a consumer as

governed by 15 U.S.C. § 1681(p) of the FCRA.  Hintz is employed as a finance manager for an

automobile dealer ("Car Dealer") located within this judicial district.  Hintz does not have an

ownership interest in the Car Dealer.  As part of his employment with the Car Dealer, Hintz has

access to Equifax, Inc.'s internet database and understands the rules and regulations set forth by

the FCRA for accessing and posting information on a consumer's credit report.  At all relevant

times, Hintz had excellent credit, including scores as high as 785 on his Experian credit report.

3.     Marshek is a Georgia citizen, residing in Augusta, Georgia.  Marshek is a

consumer as governed by 15 U.S.C. § 1681(p) of the FCRA.  Marshek is the Managing Member

of a California limited liability company – TNT Diversified Enterprises, LLC ("TNT") – whose

sole partner in the limited liability company is Wells.  At all relevant times, Marshek was the

victim of identity theft who was attempting to restore his credit and remove numerous derogatory

items from his credit reports, including his Experian credit report.

4.     Wells is a California citizen, residing in Carlsbad, California.  Wells is a

consumer as governed by 15 U.S.C. § 1681(p) of the FCRA.  Wells is a co-member with

Marshek in –TNT.  Wells only connection with Marshek is their co-ownership of the limited

2

liability company.  At all relevant times, Marshek has excellent credit, including excellent credit scores on her Experian credit report.

5.      Experian is an Ohio corporation with its principal place of business in Costa Mesa, California.  Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f) of the FCRA and is regularly engaged in the business of assembling, evaluating, and disbursing information relating to consumers for the purpose of furnishing credit reports, as defined by 15 U.S.C. § 1681(d) of the FCRA, to third-parties for decisions to be made on the extension of credit to consumers.  As part of its business practices, Experian enters into subscription agreements with its clients to enable them to have access to Experian's internet based system to inquire and post information about consumers, *e.g.*, debts, late payments, etc., that can have a negative effect on their credit reports and ability to obtain credit.  Experian is authorized to conduct business in the Commonwealth of Virginia through its Registered Agent in Richmond, Virginia.

6.      Marauder is a Florida corporation with its principal place of business at 74923 U.S. Highway 111, Indian Wells, California (Riverside County).  Marauder is a "furnisher" of information about consumers, as defined by 15 U.S.C. § 1681s-2 of the FCRA, to "credit reporting agencies" such as Experian.  Marauder is not authorized to conduct business in the Commonwealth of Virginia, but, nonetheless conducts business operations in this judicial district.  Marauder is part of a "series" of companies, including, but not limited to: (1) Bill Collector in a Box ("Bill Collector"); (2) Nationwide Capital Recovery ("NCR"); (3) CPS Investigations; and (4) Collection Professional Services that are all owned and controlled by Ryon Gambill ("Gambill").  Marauder has several internet websites *e.g.*, marauderexposed.com, dedicated to its misconduct, false reporting to credit reporting agencies, including Experian,

violations of the FCRA, and violations of other federal acts designed to protect consumers. Marauder is commonly known as one of the worst debt collectors in the industry because of its unscrupulous conduct. In fact, Marauder is known for being "America's Number One Deadbeat Debt Collector."

7.      Since the filing by Hintz of the initial Class Action Complaint, numerous individuals have expressed interest in joining the "Class" or "Subclasses" against Experian and Marauder because of Marauder's debt collection efforts and Experian's failure to remove false and derogatory information posted on their credit reports by Marauder. These persons include the following and grow virtually every week:

    a.    Connie S. Kirkpatrick, who is a California citizen, residing in Lakeside, California;

    b.    Michael Lovas, who is a New York citizen, residing in Amherst, New York;

    c.    Patrick Kelley, who is a Ohio citizen, residing in Stratton, Ohio;

    d.    Bryon K. Sturgill, who is a Kentucky, citizen, residing in Lexington, Kentucky;

    e.    Heather Lewis, who is a Texas citizen, residing in Houston, Texas;

    f.    Ralph E. Machesky, who is a Colorado citizen, residing in Littleton, Colorado;

    g.    Deborah Bernardini, who is a California citizen, residing in Yucca Valley, California;

    h.    Andrea Morgan, who is a California citizen, residing in Glendale, California;

    i.    Thomas J. Miller, who is a Florida citizen, residing in St. Augustine, Florida;

    j.    Doug Brown, who is a Kentucky citizen, residing in Independence, Kentucky;

    k.    Elaine Brown, who is a Kentucky citizen, residing in Independence, Kentucky;

    l.    Sheleagh S. Rosso, who is a California citizen, residing in Ontario, California;

m.    Nancy J. Olson, who is a Texas citizen, residing in San Angelo, Texas;

n.    Chris Cagle, who is a Texas citizen, residing in Lewisville, Texas;

o.    Nolan Vassar, who is a Texas citizen, residing in Edinburg, Texas;

p.    Marsharee Harley, who is a Tennessee citizen, residing in Memphis, Tennessee;

q.    Dennis King, who is a Colorado citizen, residing in Highlands Ranch, Colorado;

r.    Noelle Starkey, who is a Maryland citizen, residing in Halethorpe, Maryland;

s.    Joi Moorer, who is a Maryland citizen, residing in District Heights, Maryland;

t.    Susan Love, who is a New Hampshire citizen, residing in Claremont, New Hampshire;

u.    Brian Englert, who is a Pennsylvania citizen, residing in West Mifflin, Pennsylvania;

v.    Angela Rewolinski, who is a Wisconsin citizen, residing in Milwaukee, Wisconsin;

w.    Andrew Rewolinski, who is a Wisconsin citizen, residing in Milwaukee, Wisconsin;

x.    Kelli J. Thomas, who is a Maryland citizen, residing in Capital Heights, Maryland;

y.    Jeff Paul, who is a Texas citizen, residing in North Richland Hills, Texas;

z.    Kevin Goodman, who is a Texas citizen, residing in Krum, Texas;

aa.    Antoinette Barnes, who is an Ohio citizen, residing in Reynoldsburg, Ohio;

bb.    Sheila Gehlmann is a Colorando citizen, residing in Lone Tree, Colorado;

cc.    Mathew Allman, who is a Pennsylvania citizen, residing in Aston, Pennsylvania;

dd.    David J. Ritter, who is an Oregon citizen, residing in Klamath Falls, Oregon;

ee.    Cheryl Assad, who is a Massachusetts citizen, residing in South Yarmouth, Massachusetts;

ff.    Lisa Breedon, who is a Florida citizen, residing in Pinellas Park, Florida;

gg.    Janice Brown, who is a Texas citizen, residing in Arlington, Texas;

hh.    Jason Wahl, who is a Texas citizen, residing in Houston, Texas;

ii.    Camilla A. Negroni, who is a Arizona citizen, residing in Tempe, Arizona;

jj.    Arthure H. Cathcart, III, who is a Arizona citizen, residing in Tempe, Arizona;

kk.    Thomas Hicke, who is a California citizen, residing in San Diego, California;

ll.    Wendy L. Bremer, f/k/a Wendy Dorriety, who is a South Carolina citizen, residing in Travelers Rest, South Carolina;

mm.    Elizabeth G. Longmeyer, who is a who is a South Carolina citizen, residing in Travelers Rest, South Carolina;

nn.    Cynthia Ruckles, who is an Iowa, citizen, residing in Muscatine, Iowa;

oo.    David Lattal, who is a Georgia citizen, residing in Woodstock, Georgia;

pp.    Sean P. Miner, who is a Massachusetts citizen, residing in Saugus, Massachusetts;

qq.    Calin S. Teleman, who is a New York citizen, residing in New York, New York;

rr.    Titiana Benton, who is an Illinois citizen, residing in Oxon Hill, Maryland;

ss.    Gerald E. Webster, who is a Florida citizen, residing in Starke, Florida;

tt.    Aregache H. Demelew, who is a California citizen, residing in Lemon Grove, California;

uu.    Marilyn Weaver, who is a New York citizen, residing in Johnston, New York;

vv.    Alison L. Meza, who is a Texas citizen, residing in San Antonio, Texas;

ww.    Ray Powlesson, who is a Texas citizen, residing in San Antonio, Texas;

xx.    Anthony Todd, who is a North Carolina citizen, residing in Charlotte, North Carolina;

yy.    Bernita Wideman, who is a Pennsylvania citizen, residing in Apollo, Pennsylvania;

zz.    Brandi Bartels, who is a California citizen, residing in Los Angeles, California;

aaa.    David Mount, who is a California citizen, residing in Los Angeles, California;

bbb.    Paul Cowan, who is a California citizen, residing in Hemet, California;

ccc.    Mark T. Harman, who is a California citizen, residing in Modesto, California; and

ddd.    Paul Cimino, who is a New Jersey, citizen, residing in Sewell, New Jersey.

<u>JURISDICTION</u>

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because Hintz, Marshek, and Wells' individual and "class" FCRA claims against Experian and Marauder present federal questions.

9.    This Court has personal jurisdiction over Hintz because he is a United States citizen residing in this judicial district.

10.    This Court has personal jurisdiction over Marshek because he is a United States citizen who has voluntarily submitted himself to the jurisdiction of this Court.

11.    This Court has personal jurisdiction over Wells because she is a United States citizen who has voluntarily submitted himself to the jurisdiction of this Court.

12.    This Court has personal jurisdiction over Experian because it regularly conducts business activities in the Commonwealth of Virginia and in this judicial district.

13.    This Court has personal jurisdiction over Marauder because it regularly conducts business activities in the Commonwealth of Virginia and in this judicial district.

FACTUAL ALLEGATIONS

BACKGROUND OF MARAUDER AND ITS SUSPECT DEBT COLLECTION PRACTICES

14.     Shortly after it was formed as a Florida corporation on September 16, 2005 and began business operations in California, Marauder entered into a subscription agreement ("Agreement") with Experian.  In order to obtain the Agreement with Experian, Marauder was required to agree that it would only access a consumer's credit report for a permissible purpose and only post accurate and correct information on a consumer's credit report.  Under its Agreement with Experian, Marauder has the ability to access Experian's internet based database, inquire about individuals' credit reports, personal information, etc., and post derogatory and untrue information on their credit reports in its efforts to collect invalid debts.

15.     On information and belief, Marauder continues to have an Agreement with Experian despite the fact that numerous customers, consumer advocacy groups, etc. have made complaints to Experian, a website exists (marauderexposed.com listing Experian employees to contact regarding problems with Marauder), and Marauder's improper conduct is common knowledge to Experian and others in the industry.

16.     On May 5, 2009, Hintz initiated this action by filing a Class Complaint in this Court.  In turn, Experian was served with the Class Complaint on May 20, 2009, thereby placing it on notice of the allegations of Maruader's misconduct in its debt collection practices and its improper use of its Experian's internet based database.  One would think that Experian would want to reconsider its Agreement with Marauder, cancel the Agreement, and thereby prevent Marauder from causing harm to any additional consumers.  Experian, however, continued to allow Maruader to access its internet based database and post derogatory information on their Experian credit reports after notice of the filing on the initial Class Complaint by Hintz.

17.    On or about June 1, 2009, the Class Complaint that Hintz filed against Experian was posted on at least two websites – maruaderexposed.com and budhibbs.com – alerting Marauder and Experian to the existence of the lawsuit.  Again, one would think that Experian would want to reconsider its Agreement with Marauder, cancel the Agreement, and thereby prevent Marauder from causing harm to any additional consumers.  Experian, however, continued to allow Maruader to access its internet based database and post false derogatory information about consumers on their Experian credit reports.

## CONSUMER SCOTT P. HINTZ

18.    In mid-July 2006, a Bill Collector employee, Don Wynot ("Wynot"), contacted Hintz and asked him if the Car Dealer would be interested in a thirty day free trial of Bill Collector's collection software ("Software").

19.    In response, Hintz asked Wynot if there would be any charge whatsoever if the Car Dealer agreed to use the Software for the thirty day period.  In response, Wynot stated that there would be no cost to the Car Dealer.

20.    On or about July 29, 2006, Bill Collector delivered the Software to the Car Dealer with a letter stating that the Software could be used by the Car Dealer for thirty days free of charge.  In turn, the Car Dealer used the Software for exactly ten days and decided it was not a good product.  During this time period, Wynot called Hintz and informed him that the Car Dealer had incurred a $1,000 bill for its use of the Software.

21.    In response, Hintz reminded Wynot that the Car Dealer's use of the Software was free for thirty days, returned the Software to the Bill Collector via DHL Overnight mail, and received confirmation that the Software had been received by Bill Collector.

22.    Despite the fact that the Software was returned to it within the thirty day free period, Bill Collector began to forward invoices to the Car Dealer that were directed to Hintz' attention.

23.    In response, Hintz contacted Bill Collector and told them that the Car Dealer would not pay the invoices because the Software was returned during the thirty day free trial period.

24.    Shortly thereafter, NCR, a division of Marauder, began sending "dunning" collection letters to the Car Dealer for various amounts, including one for as much as $2,631.28.

25.    In response, Hintz contacted NCR, stated that the Car Dealer had returned the Software to Bill Collector during the thirty day free trial period, was not indebted for its use of the Software, stated that the Car Dealer would not pay the debt, and sent to NCR a letter confirming the above information.

26.    Following the Car Dealer's refusal to pay the invalid debt for the Software, Marauder began harassing Hintz for payment of the invalid Software debt.

27.    Since he was not the Car Dealer's owner, Hintz informed Marauder of this fact and restated that neither he nor the Car Dealer was liable for the alleged Software debt. Nonetheless, Marauder stated that if Hintz did not repay the invalid Software debt, Marauder, among other threats, stated that it would pull Hintz' credit report and post derogatory information on it if Hintz did not repay the invalid Software debt.

28.    In response to the threat, Hintz stated that he would not pay the invalid debt and told Marauder that it had no right to access his credit report and/or post derogatory information on it.

29.    During this period of harassment, Hintz was not aware that Marauder had for a considerable period of time enjoyed and garnered a national reputation for being "America's Number One Deadbeat Debt Collector" and was an entity that could not even pay its bills or satisfy judgments rendered against it and its affiliated entities.

30.    Despite actual knowledge of Marauder's national reputation for being "America's Number One Deadbeat Debt Collector" and actual knowledge of its other misconduct, including accessing individuals' personal credit information from its internet based system and posting incorrect and derogatory information on their credit reports, Experian did not terminate its Agreement with Marauder.

31.    Instead, Experian continued to allow Marauder access to its internet based system.

32.    Based on Marauder's misconduct and reputation, Experian should have terminated its Agreement with Marauder and thereby deny it access to its internet based system to prevent Marauder from improperly accessing individual's credit reports and posting false and derogatory information on their credit reports.

33.    Despite the foregoing knowledge about Marauder, Experian allowed Marauder to make an unauthorized inquiry regarding Hintz's personal credit on June 8, 2007 and, in turn, Experian provided to Marauder a copy of Hintz' credit report.

34.    Marauder's unauthorized inquiry into Hintz's credit report was reflected as a collection inquiry and, therefore, had a negative impact on his credit, *i.e.*, it lowered his credit score.

35.    Shortly after Marauder's unauthorized inquiry into his credit report, Hintz obtained a copy of his Experian credit report, noticed Marauder's unauthorized inquiry, saw that

Marauder's basis for accessing his credit report was simply stated as "permissible purpose," and that the inquiry would continue to be noted on his credit report until July 2009.

36.    After learning of Marauder's unauthorized inquiry into his credit report, Hintz sent a letter to Experian on July 13, 2007 regarding Marauder, the invalid Software debt that it was attempting to collect, its unauthorized inquiry of his credit report, the threats he had made against him, and other information. A day or so later Hintz also spoke with an Experian employee, Lisa Wallace ("Wallace"), about the above information and his desire to deny Marauder access to his credit report.

37.    On July 18, 2007, Hintz sent a letter to Wallace setting forth: (1) the Bill Collector Software issue that the Car Dealer used for a free trial; (2) why he was not indebted to Marauder because of the Software issue; (3) the threats that Marauder had made against him regarding his credit report; (4) that he did not authorize Marauder to access his credit report; and (5) his fear that Marauder would cause damage to his credit report in the future.

38.    Based on receipt of this information from Hintz, Experian had sufficient information in its possession to determine that: (1) Hintz was not indebted to Marauder; and (2) Marauder did not have a permissible purpose to access his credit report.

39.    Ten days later on July 28, 2007, Hintz sent another letter to Wallace, stating that he had received a threatening telephone call from Gambill whereby he: (1) had apparently accessed Hintz' wife's credit report because of his knowledge of her personal information; (2) demanded payment of the invalid Software debt; and (3) again threatened to cause damage to his credit if he did not pay the invalid Software debt.

40.    Subsequent to these letters and telephone conversations with Wallace and others at Experian, Hintz continued to make demands on Marauder to cease accessing his credit report from Experian.

41.    Subsequent to these letters and telephone conversations with Wallace and others at Experian, Hintz continued to make demands on Experian, via telephone conversations and letters, for it to deny Marauder access to his credit report because of fears that such access was damaging his credit and the possibility that Marauder might post false derogatory information on his credit report that would further cause harm to his credit and his ability to obtain credit.

42.    Despite Hintz' demands, Marauder continued to improperly access his credit report with Experian with no permissible purpose and Experian continued to allow Marauder to do so despite actual and constructive knowledge that Marauder had no permissible purpose to do so.

43.    Based on these facts, Experian had actual and constructive knowledge that Marauder had no authority to access Hintz's credit report.  Nonetheless, Experian permitted Marauder to continue to access his credit report on numerous occasions for no other purpose than to harass Hintz.

44.    In the late fall, early winter of 2008, Hintz and his wife decided that it would be a good decision for their family to take advantage of the near record low interest rates and refinance their residential home ("Home").

45.    When Hintz and his wife made this decision, they had a first and second mortgage on the Home that were at rates well in excess of the rates currently being offered by local banks, credit unions, and other financial institutions and lenders.

46.    Since he had an excellent credit score of 785 and his wife's credit was also very good, Hintz did not believe that he and his wife would have difficulty refinancing their Home and combining the first and second mortgages into a one mortgage at a much lower rate.

47.    Based on this belief, Hintz contacted State Farm Bank ("SFB"), inquired about refinancing the first and second mortgage on their home, had numerous communications with a SFB representative, was told by the SFB representative that he and his wife would not have a problem refinancing, and submitted the paperwork to SFB necessary to begin the refinance process.

48.    During this time period, however, and without Hintz' knowledge, Marauder had accessed his credit report with Experian and posted derogatory information stating that the invalid Software debt was in collection, referred to attorney for collection, months past due, etc.

49.    On January 29, 2009, Hintz obtained a copy of his Experian credit report and learned that the above information had been placed on his Experian credit report by Marauder despite the prior communications between Hintz and Experian and the evidence that Hintz had provided to Experian demonstrating that Marauder had no right to access his credit report and that the alleged Software debt was invalid.

50.    As a result of this derogatory information, Hintz's credit score fell to 735.

51.    After learning the above information, Hintz sent a letter to Experian on January 29, 2009 reaffirming his prior opposition to Marauder accessing his credit report, disputing the derogatory information that Marauder has posted on his credit report, and demanding that the derogatory information be deleted immediately.

52.    On February 3, 2009, Hintz sent a letter to Wallace at Experian voicing his opposition to Marauder accessing his credit report, disputing the derogatory information that

Marauder has posted on his credit report, and demanding that the derogatory information be deleted immediately.

53.    By this time, however, SFB had received Hintz's credit report from Experian that listed the derogatory information that Marauder had improperly placed on it.

54.    On February 20, 2009, Hintz received an adverse action letter from SFB indicating that it would not issue a loan to refinance the Home because of derogatory information, *e.g.*, collection account, which was listed on his Experian credit report.

55.    Since the derogatory information posted by Marauder is the only derogatory information on his credit report, the basis for SFB's refusal to issue a loan to Hintz and his wife to refinance the Home was a direct and proximate result of the false information that Marauder posted on Hintz's credit report with Experian.

56.    Following receipt of the adverse action letter from SFB, Hintz contacted Experian, explained that he and wife had been declined a refinance loan by SFB because of the false information that Marauder has placed on Hintz's credit report, demanded that Marauder not be allowed to access his credit report, and demanded that the derogatory information that Marauder placed on his credit report be deleted immediately.

57.    In turn, Hintz obtained copies of his credit report from Experian on February 27, 2009 and March 5, 2009 to determine if Experian had taken action on the false information that Marauder had placed on his credit report.

58.    After reviewing the two credit reports, Hintz noticed that each one stated that Experian had investigated his complaint regarding Marauder and verified the derogatory information was correct and accurate.

59.    Marauder and Experian had actual knowledge of the inaccuracy regarding Hintz, deliberately and willfully chose to ignore it, and allowed it to remain uncorrected without regard for Hintz' rights and well-being.

60.    After receiving numerous notices from Hintz and within two years preceding the filing of this Complaint, Experian prepared and published to third-parties, including potential lenders, multiple inaccurate consumer reports about Hintz which contained the false information that Marauder placed on his credit report.

61.    Despite receiving notice from Hintz about its inaccurate reporting to Experian about the invalid Software debt, Marauder was forwarded this information and Hintz' disputes about the validity of this information from Experian on numerous occasions since 2007.  Despite receiving notice on numerous occasions, Marauder failed and refused to investigate and correct its inaccurate reporting about Hintz.

62.    As a result of Experian and Marauder's failure to furnish and report accurate information about the invalid Software debt, Hintz has incurred actual damages.

63.    Namely, as a result of Experian and Marauder's misconduct, Hintz is being held hostage by an unscrupulous debt collector – Marauder – that will do anything to collect an invalid debt and a credit reporting agency – Experian – that fails and refuses to take the time to review the information that it has received about Marauder from numerous sources (including Hintz) to recognize that the derogatory information that Marauder is posting about Hintz on his credit report is false, invalid, and causing him harm.

64.    Until Experian cancels its Agreement with Marauder, denies it access to its internet based system, and removes the false derogatory information placed on his credit report by Marauder, Hintz and his family will continue to incur damages.

## CONSUMERS TYSON MARSHEK AND TIFFANY WELLS

65.    In 2002, Marshek was incarcerated at the age of eighteen and sentenced to serve six years in prison.

66.    While Marshek was imprisoned, various individuals, including family members, friends, and acquaintances, who had access to his personal information, *e.g.*, date of birth, social security name, past addresses, etc., used his personal information to open accounts in his name and run up large debts that were never paid.

67.    Based on these events, Marshek was the victim of identity theft and did not even know it because of his imprisonment.

68.    On July 2, 2008, Marshek was released from prison, made a decision to start a new life, and began to get his financial affairs in order.  During this process, Marshek obtained a copy of his credit report, discovered the various accounts that had been opened during his imprisonment, and learned that these accounts were in collection status because the original debt was never paid.

69.    In turn, Marshek contacted Experian and the collection agencies, notified them that he was the victim of identify theft, and provided them with the information to verify that he could not have opened the accounts because of his imprisonment.

70.    During this process, Marshek noticed that new collection accounts would appear on his Experian credit report after other collection accounts were removed by Experian.  One of the "new" collection accounts that appeared was one for Marauder.

71.    Marauder first appeared on Marshek's Experian credit report in December 2008.

72.    After finding its contact information, Marshek contacted Marauder and informed it that he was the victim of identity theft and offered to prove to Marauder that it was impossible

for him to be the individual that opened the alleged account at issue. On information and belief, the individual at Marauder with whom Marshek spoke with was Gambill.

73.    Despite his attempts to resolve the situation, Marauder refused to listen to Marshek, refused to delete the derogatory information that it has placed on his Experian credit report, stated that the debt was valid, and told him that it expected him to pay the debt. Marshek refused to make any payments to Marauder and continued to dispute the alleged debt.

74.    In turn, Marshek contacted Experian on numerous occasions and notified them that he was disputing the alleged debt that Marauder had placed on this Experian credit report and informed Experian that this was another situation where he was the victim of identity theft.

75.    Despite these facts, Experian contacted Maruader, verified that Marshek's debt was valid, and refused to remove the derogatory information from his Experian credit report.

76.    In turn, Marauder focused its unscrupulous debt collection practices by contacting Marshek's friend, Heaven Tutson, and his business partner, Wells, in early June 2009 and made disparaging remarks about Marshek, including, but not limited to, that he was a deadbeat and was indebted to Marauder.

77.    After he discovered that Marauder was contacting his friends and business partner, Marshek contacted Marauder on June 8, 2009 and spoke with Gambill about the alleged debt, his Experian credit report, and the fact that Marauder was contacting his friends and business partner, Wells.

78.    During the conversation, Gambill refused to listen to Marshek's explanation for why the debt was invalid, that he was the victim of identify theft, and his requests that Maruader remove the debt from his Experian credit report or at least mark the item disputed. In response, Gambill stated that Marauder would not remove the debt from Marshek's Experian credit report,

stated that he had no obligation to list the debt as disputed, and told him that they only way that Marauder would remove the derogatory item from his Experian credit report was if he paid it the invalid debt.

79.    In response, Marshek stated that he would not pay the debt to Marauder, but would seek to have it removed from his Experian credit report through other means, including fileing a complaint with the better business bureau.

80.    Following his communication with Gambill, Marshek obtained a copy of his Experian credit report and learned that after he spoke with Gambill (June 8, 2009), Marauder accessed his credit report and made an inquiry under the guise that it had a "permissible purpose" to do so.

81.    To make matters worse, Marshek discovered on June 9, 2009 that Marauder accessed Wells' Experian credit report under the guise that it was for a "permissible purpose" despite the fact that the dispute over the invalid debt is only between Marshek and Marauder.

82.    To add insult to injury, Marshek received Marauder's response to his better business bureau complaint on June 10, 2009, stating that the dispute had been resolved in Marshek's favor.  Obviously, this representation by Maruader was a blatant lie.

83.    Accordingly, despite notice of Hintz' filing of the initial Class Complaint since at least May 20, 2009, Experian failed to take any steps to stop Maruader's access to its internet based database.

84.    Experian's lack of concern for consumers resulted in two additional individuals – Marshek and Wells – suffering adverse consequences to their Experian credit reports based on Marauder's unscrupulous debt collection activities and Experian's failure to prevent such conduct and harm to consumers.

85.     Namely, as a result of Experian and Marauder's misconduct, Marshek and his friends and colleagues, *e.g.*, Wells, are being held hostage by an unscrupulous debt collector – Marauder – that will do anything to collect an invalid debt and a credit reporting agency – Experian – that fails and refuses to take the time to review the information that it has received about Marauder from numerous sources to recognize that the derogatory information that Marauder is posting about consumers on their Experian credit report is false, invalid, and causing consumers harm.

86.     Until Experian cancels its Agreement with Marauder, denies it access to its internet based system, and removes the false derogatory information placed on Marshek and Walls' credit reports by Marauder, Marshek and Wells will continue to incur damages.

## CLASS ALLEGATIONS AGAINST EXPERIAN

87.     Hintz, Marshek, and Wells repeat and reallege each of the allegations made in Paragraphs 1 through 86 as if they were set forth in full herein.

88.     Pursuant to Fed. R. Civ. P. 23, Hintz, Marshek, and Wells bring this action for themselves and on behalf of a class ("Class") or one or more subclasses of similarly situated individuals against Experian and Maurader initially defined as follows:

    a.  All consumers that Experian furnished a credit report to Marauder since May 5, 2007; or

    b.  All consumers that contacted Experian from May 5, 2007 to the present date and complained or disputed information that had been posted on their Experian credit reports by Marauder.

89.     On information and belief, Hintz, Marshek, and Wells assert that Class members are so numerous that joinder of all is impractical.  The names and addresses of the Class

members are identifiable through documents maintained by Experian and Marauder and the Class Members may be notified of the pendency of this action by publication or mail. Given these facts, the numerosity requirements of Fed. R. Civ. P. 23(a)(1) are present and satisfied.

90.    Common questions of law and fact exist to all of the Class members. These common questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other issues:

    a.    Whether Experian provided a credit report to Marauder without requiring Marauder to certify the permissible purpose for which the information was sought;

    b.    Whether Marauder obtained an Experian credit report from consumers without a legitimate permissible purpose;

    c.    Whether Experian provided a credit report to Marauder without requiring Marauder to certify that the information would be used for no other purpose than the reason(s) certified to Experian;

    d.    Whether Marauder posted false information on consumers credit reports and refused to remove this information after it was disputed by the consumers;

    e.    Whether Experian had reasonable grounds or basis for believing that the credit report requested by Marauder would be used for a permissible purpose;

    f.    Whether Experian knowingly and intentionally committed an act in conscious disregard of the consumer's rights;

g.     Whether Experian has appropriate methods and practices in place to verify, *i.e.*, reinvestigate, the information that it allows a furnisher of information, *e.g.*, Marauder, to post or place on a consumer's credit report after it receives a dispute from a consumer about the accuracy of this disputed information;

h.     Whether Maruader has appropriate methods and practices in place to verify, *i.e.*, reinvestigate, the information that it receives about consumers after its posts or places on consumers' credit report and receives notice from the consumers that the information is inaccurate and disputed;

i.     Whether Experian has the appropriate methods and practices in place to ensure the accuracy of the credit reports that it issues about consumers to those who request such information;

j.     Whether Marauder has the appropriate methods and practices in place to ensure the accuracy of information that it places on consumers' Experian credit reports;

k.     Whether Experian's conduct or omissions equal a violation of FCRA; and

l.     Whether Marauder's conduct or omissions equal a violation of FCRA;

Given these facts, the predominance of common questions of the law and fact requirement of Fed. R. Civ. P. 23(a)(2) is present and satisfied.

91.     Hintz, Marshek, and Wells' class claims are typical of the claims of each Class and subclass member. Hintz, Marshek, and Wells are entitled to relief under the same causes of action as the other Class and subclass members. Given this fact, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is present and satisfied.

92.    Hintz, Marshek, and Wells are adequate representatives of the Class because their interests coincide with each other, are not antagonistic to each other, are the same as the interests of the Class and subclasses that they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to pursue this litigation vigorously to cease Marauder's ability to use Experian's internet based database to harm themselves and other consumers.  The interests of members of the Class and subclasses will be fairly and adequately protected by Hintz, Marshek, Wells, and their counsel.  Given this fact, the adequacy requirement of Fed. R. Civ. P. 23(a)(1) is present and satisfied.

93.    Class certification is appropriate for the Class because Experian and Marauder have acted on grounds generally applicable to the Class and subclasses, making appropriate declaratory and injunctive relief with respect to Hintz, Marshek, Wells, and the Class and subclass members.  Given this fact, the requirements of Fed. R. Civ. P. 23(b)(2) are present and satisfied.

94.    Questions of law and fact common to the Class and subclass members predominate over questions affecting only individual members and a class action is superior to other available methods for a fair and efficient adjudication of this matter.  The damages suffered by each Class and subclass member would prove burdensome and expensive given the complex and extensive litigation required.  It would be virtually impossible for the Class and subclass members individually to redress effectively the wrongs done to them.  Even if the Class and subclass members themselves could afford such litigation, it would be an unnecessary burden on the Courts.  Moreover, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the Court system presented by complex legal and factual issues raised herein.  By contrast, the Class action

device will result in substantial benefits to the Class and subclass members, Experian, and Marauder to resolve numerous individual claims based on a single set of proof in a case. Given these facts, the requirements of Fed. R. Civ. P. 23(b)(3) are present and satisfied.

95.     Class certification is appropriate because Experian and Marauder have acted on grounds generally applicable to the Class, subclass and their members, making appropriate equitable injunctive relief with respect to Hintz, Marshek, Wells and the Class and subclass members.

COUNT ONE: CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681e(a)—Experian)

96.     Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 95 as if they were set forth in full herein.

97.     Experian violated 15 U.S.C. § 1681e(a) by failing to follow or establish reasonable procedures to assure that Marauder had a permissible purpose under 15 U.S.C. § 1681b for obtaining Hintz, Marshek, Wells, and the other Class members' credit reports on numerous and repeated occasions.

98.     As a result of Experian's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

99.     Experian's conduct, actions, and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

100.    In the alternative, Experian was negligent, entitling Hintz, Marshek, Wells, and the other Class members are entitled to recover under 15 U.S.C. § 1681o.

101.    Hintz, Marshek, Wells,  and the other Class members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

COUNT TWO: CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681b—Experian)

102.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 101 as if they were set forth in full herein.

103.    Experian violated 15 U.S.C. § 1681b because it furnished credit reports regarding Hintz, Marshek, Wells, and the other Class members without a permissible purpose to do so.

104.    As a result of Experian's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

105.    Experian's conduct, actions, and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

106.    In the alternative, Experian was negligent, entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

107.    Hintz, Marshek, Wells and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys'

fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

COUNT THREE – CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681e(b)—Experian)

108.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 107 as if they were set forth in full herein.

109.    Experian violated 15 U.S.C. § 1681e(b) by failing to follow or establish reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files that it published and maintains concerning Hintz, Marshek, Wells, and the other Class and subclass members.

110.    As a result of Experian's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class and subclass members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

111.    Experian's conduct, actions, and omissions were willful, rendering it liable to Hintz, Marshek, Wells, and the other Class and subclass members for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

112.    In the alternative, Experian was negligent, entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

113.    Hintz, Marshek, Wells, and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT FOUR – CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681I(a)(1)—Experian)

114.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 113 as if they were set forth in full herein.

115.    Experian violated 15 U.S.C. § 1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the invalid Marauder inquires and false derogatory information from Hintz, Marshek, Wells, and the other Class and subclass members' credit files.

116.    As a result of Experian's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class and subclass members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

117.    Experian's conduct, actions, and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

118.    In the alternative, Experian was negligent entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

119.    Hintz, Marshek, Wells, and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

COUNT FIVE – CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681i(a)(4)—Experian)

120.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 119 as if they were set forth in full herein.

121.    Experian violated 15 U.S.C. § 1681i(a)(4) on multiple occasions by failing to review and consider all relevant information about Hintz, Marshek, Wells, and the other Class and Subclass members' disputes over the invalid debt that Marauder was posting on their Experian credit reports.

122.    As a result of Experian's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class and Subclass members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

123.    Experian's conduct, actions, and omissions were willful rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

124.    In the alternative, Experian was negligent entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

125.    Hintz, Marshek, Wells, and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT SIX - HINTZ AND MARSHEK INDIVIDUAL CLAIMS
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681i(a)(5)(A)—Experian)

126.    Hintz and Marshek repeat and reallege the allegations made in Paragraphs 1 through 125 as if they were set forth in full herein.

127.    Experian violated 15 U.S.C. § 1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed information about the invalid debt that Marauder was posting on Hintz and Marshek's credit file or modify the item of information upon an accurate investigation.

128.    As a result of Experian's conduct, actions, and omissions, Hintz and Marshek suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

## COUNT SEVEN – CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681s-2(b)—Marauder)

129.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 128 as if they were set forth in full herein.

130.    Marauder violated 15 U.S.C. § 1681s-2(b) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the invalid and false derogatory information from Hintz, Marshek, Wells, and the other Class and subclass members' Experian credit reports.

131.    As a result of Marauder's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class and subclass members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

132.    Marauder's conduct, actions, and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

133.    In the alternative, Marauder was negligent entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

134.    Hintz, Marshek, Wells, and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Marauder in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT EIGHT – CLASS CLAIM
(Violation of the Fair Credit Reporting Act,
15 U.S.C. § 1681b(f)—Marauder)

135.    Hintz, Marshek, and Wells repeat and reallege the allegations made in Paragraphs 1 through 134 as if they were set forth in full herein.

136.    Marauder violated 15 U.S.C. § 1681b(f) on multiple occasions by obtaining or accessing consumers' credit reports from Experian for an impermissible purpose – collecting debts that it knew were invalid and were not owed to Marauder or anyone else.

137.    As a result of Marauder's conduct, actions, and omissions, Hintz, Marshek, Wells, and the other Class and subclass members suffered damages by loss of credit, loss of the ability to purchase and benefit from credit, and mental and emotional pain, anguish, humiliation, and embarrassment.

138.    Marauder's conduct, actions, and omissions were willful, rendering it liable for punitive damages in an amount to be determined by the fact-finder pursuant to 15 U.S.C. § 1681n.

139.    In the alternative, Marauder was negligent entitling Hintz, Marshek, Wells, and the other Class and subclass members to recover under 15 U.S.C. § 1681o.

140.    Hintz, Marshek, Wells, and the other Class and subclass members are entitled to recover actual damages, statutory damages, punitive damages, litigation costs, and attorneys' fees from Marauder in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiffs Scott P. Hintz, Tyson E. Marshek, and Tiffany Wells, on behalf of themselves and on behalf of all similarly situated individuals, request respectfully that the Court:

(1)    enter an Order certifying the proposed class and subclasses herein under Fed. R. Civ. P. 23 and appointing them and their counsel to represent same;

(2)    create a common fund available to provide notice of and remedy Defendant Experian Information Solutions, Inc. and Marauder's violations of the Fair Credit Report Act, 15 U.S.C. §§ 1681, *et seq.*;

(3)    award statutory and punitive damages for the Class Claims;

(4)    award actual or statutory damages for the Individual Claims;

(5)    award punitive damages for the Individual Claims;

(6)    award injunctive and declaratory relief as pled in the Second Amended Class Complaint;

(7)     award attorneys' fees, litigation costs, and expenses as permitted by the Fair

Credit Report Act, 15 U.S.C. §§ 1681, *et seq.*;

(8)     award prejudgment and post-judgment interest; and

(9)     award such other and further relief as the Court deems appropriate and just.

JURY TRIAL DEMANDED

SCOTT P. HINTZ, on behalf of himself and
all similarly situated individuals,
TYSON E. MARSHEK, on behalf of himself and
all similarly situated individuals, and
TIFFANY WELLS, on behalf of herself and
all similarly situated individuals

By:____/s/ Jason C. Roper_____
Of Counsel

Jason C. Roper, Esquire (VSB #45814)
MCKENRY, DANCIGERS, DAWSON & LAKE, P.C.
192 Ballard Court, Suite 400
Virginia Beach, Virginia  23462
Telephone:    (757) 461-2500
Facsimile:    (757) 461-2341
jcroper@va-law.org
bcchick@va-law.org

Counsel for Plaintiffs Scott P. Hintz, Tyson E. Marshek, and Tiffany Wells, on behalf of
themselves and on behalf of all similarly situated individuals

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of September 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony, Esquire
TROUTMAN SANDERS LLP
Troutman Sanders LLP
1101 Haxall Point
Richmond, Virginia 23218-1122
david.anthony@troutmansanders.com

_____/s/ Jason C. Roper_____
Jason C. Roper, Esquire
Virginia Bar Number 45814
Counsel for Plaintiffs Scott P. Hintz, Tyson E. Marshek,
and Tiffany Wells, on behalf of themselves and on behalf
of all similarly situated individuals
MCKENRY, DANCIGERS, DAWSON & LAKE, P.C.
192 Ballard Court, Suite 400
Virginia Beach, Virginia 23462
Phone:  757-461-2500
Fax:  757-461-2341
jcroper@va-law.org